(22 App. Div. 537.)

McCONNELL v. MACKIN.

(Supreme Court, Appellate Division, Second Department. November 30, 1897.)

1. AGENCY—DELEGATION OF AUTHORITY.
   The rule that an agency to collect and receive money is one of personal trust and confidence, and therefore not to be delegated to another without authorization, is applicable to special authority, but not to a general agency to take charge of and manage the business of a principal.

2. SAME—EVIDENCE—PAYMENT.
   In an action to foreclose a mortgage it appeared that defendant had made payments of interest to one K., a lawyer, and there was evidence that K. paid them over to H., plaintiff's father, and that the latter was the general manager of plaintiff's business. *Held* to warrant a finding by the trial court that defendant "paid to H., the father of the plaintiff and her agent," the money referred to.

Appeal from special term, Kings county.

Action by Mary E. McConnell against John Mackin. From the judgment, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BRADLEY, BARTLETT, and HATCH, JJ.

John B. Shanahan (Edward M. Grout on brief), for appellant.
Stephen B. Jacobs (George W. Pearsall on brief), for respondent.

BRADLEY, J.   The purpose of the action was to foreclose a mortgage made by the defendant, John Mackin, to the plaintiff, of date February 27, 1892, to secure the payment of $1,600 of the purchase money of the mortgaged premises (which had been conveyed to him by the plaintiff), in monthly installments of $20 and interest. It provided that any default in payment for the space of 30 days would permit the plaintiff to treat the whole amount remaining unpaid as due and payable.   The controversy has relation to the amount remaining unpaid of the mortgage debt.   It is claimed on the part of the defendant, and the trial court found, that he had paid thereon $580 and interest up to the 1st day of July, 1895.   It appears by the evidence that the defendant made payment of such amount in installments to be applied upon the mortgage; but, as the payments were not made to the plaintiff personally, it is insisted in her behalf that they cannot be treated as applicable to the reduction of the debt secured by it.   The money was paid by the defendant to William H. Kent, at his office.   The negotiation for the sale and purchase of the premises was had between John Heggerty (the father of the plaintiff) and the defendant.   Mr. Kent had some business relations with Heggerty, and was designated as the person to prepare the papers, in consummation of the sale to the defendant, who and Heggerty met at Kent's office.   The deed executed by the plaintiff was produced by Heggerty; $500 of the purchase money was paid; and the bond and mortgage to secure the payment of the residue were drawn by Kent, and executed by the defendant; and then Heggerty informed the defendant that he could make the payments upon the bond and mortgage to Mr. Kent.   The plaintiff was not present, nor had she appeared personally in the negotiation for the purchase.   The mortgage was sent to the proper office for record by Mr. Kent.   It was returned to him, and, with the bond, remained in his possession until a short time before this action was commenced, late in the year 1896, when they were delivered to Heggerty, and by him to the plaintiff.   She testified that her father told her that the title was to be transferred at Kent's office; that she knew the bond and mortgage were to provide for monthly payments; that she got the $500 paid by the defendant at the time of the delivery of the deed and mortgage; that she received the money from her father; that from that time down to December, 1896, "I never paid any attention to this bond and mortgage.   I thought my father had it amongst a lot of papers belonging to him.   I never charged my mind as to where it was.   It slipped my memory.   That is about all."   As bearing further upon her business relations with her father, she testified that she held a great deal of his property in her name; that he had managed the parcel of property in question for her. While she testified that she never gave Mr. Kent any authority to collect any money on the bond and mortgage, she does not say whether or not her father had authority to do so.   There was evi-

dence tending to prove that Kent handed to Heggerty his bank
check, payable to the order of the plaintiff, for a sum of money, and
that the names of the plaintiff and that of Heggerty were indorsed
upon it by the latter for the purposes of its collection. The plain-
tiff testified that she never saw the check, and did not indorse her
name upon it, but she does not say that her father was not author-
ized to do so. And, in view of the circumstances appearing by the
evidence and the permissible inferences, it is somewhat significant
that her father, who might have been, was not, called as a witness.
Milliman v. Railroad Co., 3 App. Div. 109, 39 N. Y. Supp. 274; Mc-
Guire v. Insurance Co., 7 App. Div. 575, 40 N. Y. Supp. 300.

The plaintiff personally had no communication with the defendant
or his wife until after her father, on or about July 6, 1895, directed
the defendant, through his wife, to pay no more money to Kent.
Soon thereafter Mrs. Mackin called upon the plaintiff, and, as she
testified, the plaintiff told her that her father (Heggerty) had objected
to taking any more money through Mr. Kent, that the defendant
wanted to get the bond, and that the plaintiff said that she would not
take any money without her father's consent, that she would see
him soon, and that "she wanted him to straighten it up." The plain-
tiff's statement of the interview does not correspond with the portion
of it thus related. But there was evidence tending to prove a state
of facts from which the inference was permitted that the plain-
tiff's father was the general manager of her business, and, as such,
had power to attend to the collection of this money, and to receive
it. The plaintiff does not by her evidence seek to repel the inference
warranted by the evidence that he had that relation to her business,
but her evidence tends to support that relation. It is true, as sug-
gested by the learned counsel for the plaintiff, that the agency to
collect and receive money is one of personal trust and confidence,
and therefore not to be delegated to another without authority.
Lewis v. Ingersoll, *40 N. Y. 347; Fellows v. Northrup, 39 N. Y. 117.
That rule is applicable to special authority, and not to a general
agency to take charge of and manage the business of the principal.

There is evidence tending to prove that the plaintiff knew that
Kent was receiving payments of money on this bond and mortgage;
and, further, the evidence of Kent is that he paid over to Heggerty,
and paid out for the plaintiff, the money he received of the defend-
ant. And, as the money may be deemed to have been collected and
received by Heggerty by the hand of Kent, the fact was warranted
from the evidence, as found by the trial court, that the defendant
"paid to John Heggerty, the father of the plaintiff and her agent,"
the sum of money referred to upon the bond and mortgage, leaving
unpaid $1,020 and interest thereon from July 1, 1895. The award of
no costs to the plaintiff subsequent to the answer was fairly justified.

The judgment should be affirmed. All concur.